IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 NOV 20 AM 11:09

[DISTRICT COURT STAMP]
N.D. OF ALABAMA

STACY DENISE JACKSON, )
)
Plaintiff, )
)
v. ) Case No. CV-02-TMP-830-S
)
UNITED STATES )
POSTAL SERVICE, )
)
Defendant. )

ENTERED
NOV 20 2003

### MEMORANDUM OPINION

This cause is before the court on the motion to dismiss plaintiff's claims filed by the defendant, the United States Postal Service ("USPS") on May 14, 2003. The motion has been supported by a brief and evidence. Plaintiff failed to timely file a brief or offer evidence in opposition to the motion. The parties have consented by stipulation to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). Accordingly, the court enters this order granting the defendant's motion to dismiss.

### FACTS

For purposes of assessing the defendant's motion to dismiss or for summary judgment, the following facts are presumed to be true. The plaintiff, Stacy Denise Jackson, was hired by the United States Postal Service as a non-career transitional city letter carrier on

1

/6

September 27, 1997. At that time, all city letter carriers were collectively represented by the National Association of Letter Carriers, AFL-CIO ("NALC"). The National Agreement between the NALC and the Postal Service contained terms and conditions applying specifically to transitional employees. Those terms allowed transitional city letter carriers to be dismissed for just cause. The dismissal of such an employee was subject to the agreement's grievance-arbitration procedure only if "the employee had completed ninety (90) work days, or had been employed for 120 calendar days, whichever comes first." NALC-USPS National Agreement, Section 11, Appendix C. The plaintiff was discharged from her position on December 19, 1997, within 90 calendar days of her original hire as a transitional city carrier.

On October 30, 1997, the plaintiff claimed a work-related injury. The Office of Workers' Compensation of the U.S. Department of Labor determined that Jackson had not met the guidelines for establishing an injury that would be covered under the Federal Employees Compensation Act ("FECA").

## STANDARD OF REVIEW

When ruling on a motion to dismiss, the court must assume that the factual allegations in the complaint are true. Neitzke v. Williams, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Fed. R. Civ. P. 12(b)(6). Furthermore, assuming that the facts

alleged are true, a complaint may be dismissed only if it is clear that the plaintiff could not prove any set of facts in support of her claims that would entitle her to relief. See Hishon v. King & Spaulding, 467 U.S. 69, 73; 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998). Therefore, the court accepts plaintiff's allegations as true and views those allegations in the light most favorable to the plaintiff.

## DISCUSSION

### A. Subject-Matter Jurisdiction of Workers' Compensation Claim

Plaintiff apparently is alleging that she is entitled to workers' compensation from the United States Postal Service. Postal employees are expressly subject to, and have benefits based on, the Federal Employees Compensation Act ("FECA"). 39 U.S.C. § 1005(c). The federal workers' compensation program is a statutory scheme intended as an exclusively remedy for federal employees with work-related injuries. See 5 U.S.C. § 8101 et seq. When the Office of Workers' Compensation determines that a federal employee has suffered a work-related injury, the government provides compensation. The pertinent statute provides as follows:

> The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . .

5 U.S.C. § 8102(a).

3

FECA also provides that once the Secretary of Labor, through the Office of Workers' Compensation, decides that an injury is not work-related, that determination that the employee is not entitled to compensation is final and not subject to any sort of review. The pertinent statute provides as follows:

> (a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may –
>
>> (1) end, decrease, or increase the compensation previously awarded; or
>>
>> (2) award compensation previously refused or discontinued.
>
> (b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is
>
>> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>>
>> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128.

Federal Courts of Appeals have routinely held that FECA decisions made by the Secretary of Labor or his designee (in this

4

case, the Office of Workers' Compensation) are not reviewable by federal courts.[1]

The Office of Workers' Compensation, a designee of the Secretary of Labor, has decided that Ms. Jackson did not suffer a work-related injury and thus does not qualify to receive FECA benefits. According to 5 U.S.C. § 8128, that decision is final and cannot be reviewed by this court. Accordingly, the claim should be dismissed for lack of subject-matter jurisdiction.

**B. Collective Bargaining Agreement**

Plaintiff may be alleging that she was fired without just cause in violation of the 1994-1998 NALC-USPS National Agreement. However, plaintiff was discharged within 90 days of her initial employment as a transitional employee. Thus, under the terms of the agreement, plaintiff had not been employed long enough for the USPS to need just cause to dismiss her. Because of her short term of employment, plaintiff did not have a right to be discharged only for just cause, and she also did not have access to the contractual

---

[1] See, e.g., Grijalva v. United States, 781 F.2d 472, 474 (5th Cir. 1986)(holding that employee could not collaterally attack Secretary of Labor's determination in a Tort Claims Act suit but instead needed to seek review from Secretary); Wallace v. United States, 669 F.2d 947, 953 (4th Cir. 1982) (recognizing that the Secretary of Labor's decision under FECA is not reviewable by a federal court); Gill v. United States, 641 F.2d 195, 197 (5th Cir. 1981)(holding that Secretary of Labor's decision that employee was entitled to FECA benefits was not reviewable by a federal court); Waters v. United States, 458 F.2d 20, 22 (8th Cir. 1972) (holding that since the Secretary of Labor's decisions under FECA are not reviewable, employee could not maintain Tort Claims Act claim).

5

grievance-arbitration procedure provided by the National Agreement. Plaintiff was in essence a probationary employee who enjoyed no substantive or procedural due process rights connected with the termination of her employment. See Stritzl v. United States Postal Service, 602 F.2d 249, 251-52 (10th Cir. 1979).

Even if plaintiff had the right to be dismissed only for just cause subject to grievance and arbitration, her contract claim can only be pursued pursuant to 39 U.S.C. 1208(b), which gives federal courts jurisdiction over disputes involving the Postal Service and labor organizations representing postal employees. The provision supplies "federal courts [with] jurisdiction of disputes arising under collective bargaining agreements executed by USPS." McNair v. United States Postal Service, 768 F.2d 730, 735 (5th Cir. 1985). Section 1208(b) is the analogue of § 301 of the Labor Management Relations Act,[2] and as a result, § 301 decisions are applicable in § 1208(b) cases. In addition, "the results obtained by the union are normally conclusive of the employees' rights under the agreement. This means, of course, that an aggrieved employee whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for the breach of the collective bargaining agreement, or to attack in court the results of the grievance process." Id. However, an aggrieved employee is not bound by the grievance procedure and may

---

[2]Located at 29 U.S.C. § 185(a).

6

sue her employer, the union, or both if she can prove both that the union breached its duty of fair representation and that the employer violated the collective bargaining agreement. Id. In addition, "[i]f the arbitration and grievance procedure is the exclusive and final remedy for the breach of the collective bargaining agreement, the employee may not sue his employer . . . unless he has exhausted the procedure." Landry v. Cooper, 880 F.2d 846, 850 (5th Cir. 1989). See also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965); Strachan v. Union Oil Co., 768 F.2d 703, 704-05 (5th Cir. 1985).

In this case, plaintiff's terms and conditions of employment were established under the 1994-1998 National Agreement between her union, NALC, and the Postal Service. That collective bargaining agreement established a multi-level grievance procedure that culminated in binding third-party arbitration.

Plaintiff did not assert that she attempted to use the grievance-arbitration procedure provided by the National Agreement or that she exhausted the procedure through binding arbitration. Thus, she independently lacks standing to sue her employer for breach of the collective bargaining agreement unless she falls within the exception that she was not fairly represented by her union. Plaintiff has not alleged that her union, NALC, breached its duty to fairly represent her in this case. Thus, because she does not fall within the exception, she independently lacks

7

standing to sue her employer for breach of the collective bargaining agreement between NALC and the Postal Service. Because of her lack of standing, plaintiff's contractual claims are due to be dismissed.

Even if plaintiff had standing to bring these contractual claims, they still would be due to be dismissed due to the expiration of the statute of limitations. The limitation period for a "hybrid" fair representation/breach of contract suit is six months. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 154-55 (1983); § 10(b) of the National Labor Relations Act[3]. Plaintiff's employment with the Postal Service ended on December 19, 1997. Her suit was filed on April 2, 2002. This is well past the six-month limitation period for filing such a suit. Thus, plaintiff's claims also are barred by the applicable statute of limitation.

### C. Preemption of State-Law Claims

Because plaintiff has no remaining federal claims, the court declines to retain supplemental jurisdiction over the state-law claim and it is due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). In addition, the Civil Service Reform Act and the Postal Reorganization Act likely preempt any state-law claim for wrongful discharge. See American Postal Workers Union v.

---

[3] Located at 29 U.S.C. § 160(b).

8

United States Postal Service, 940 F.2d 704, 708 (D.C. Cir. 1991); Pipkin v. United States Postal Service, 951 F.2d 272, 275-76 (10th Cir. 1991); Buchanan v. United States Postal Service, 508 F.2d 259, 263 (5th Cir. 1975)[4].

## Conclusion

Assuming the facts alleged in the complaint are true, and viewing those facts in the light most favorable to the plaintiff, plaintiff has not stated viable claims arising from the alleged injury she sustained while employed by the United States Postal Service. Plaintiff's claims are barred because this court lacks subject matter jurisdiction over this matter and because plaintiff lacks standing to bring these claims. Because plaintiff has no valid federal claims, the court declines to exercise supplemental jurisdiction over any state-law claims. Consequently, defendant's motion to dismiss is due to be granted. A separate order will be entered dismissing plaintiff's claim.

DATED this 19th day of November, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

[4] In Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc), the Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.